## In re IVAN F. BOESKY SECURITIES LITIGATION.

ARDEN WAY ASSOCIATES, et al., Plaintiffs,

v.

Ivan F. BOESKY, et al., Defendants.

GUINNESS ENTERPRISES, INC., Plaintiff,

v.

Ivan F. BOESKY, et al., Defendants.

Nos. 87 Civ. 1865 (MP), 87 Civ. 1898 (MP).
MDL No. 732.
No. M21–45–MP.

United States District Court, S.D. New York.

Sept. 24, 1987.

Cadwalader, Wickersham & Taft, New York City by George D. Reycraft, Richard J. Wiener, Pamela Rogers Chepiga and Debra L. Brown, for plaintiffs Arden Way Associates, et al.

Arnold & Porter, Washington, D.C. by Richard J. Wertheimer and Richard P. Schifter, for plaintiff Guinness Enterprises, Inc.

Mudge Rose Guthrie Alexander & Ferdon, New York City by Audrey Strauss and Bart Timothy Schectman, for defendant Martin A. Siegel.

Fischetti & Pomerantz, New York City by Mark F. Pomerantz and David T. Grudberg, for defendant Dennis B. Levine.

## MEMORANDUM

MILTON POLLACK, Senior District Judge:

Defendants Martin A. Siegel and Dennis B. Levine have moved to dismiss all claims against them in the *Arden Way* and *Guinness* Amended Complaints pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b).

Plaintiffs are purchasers of securities issued by Ivan F. Boesky & Company, L.P. (the "Partnership") in 1986 when the Partnership was capitalized with approximately $1 billion in funds raised primarily by Drexel Burnham Lambert Incorporated ("Drexel") through an integrated offering of the Partnership's securities. Offering materials were distributed by Drexel and others to prospective purchasers of limited partnership interests in the Partnership. The funds of the Partnership were to be employed in arbitrage and other securities transactions to be managed by Ivan F. Boesky. Plaintiffs plead claims against the moving defendants of violations of the federal securities laws and the common law arising out of those purchases.

Plaintiffs claim that the information disseminated about the Partnership and Boesky and those connected with them to potential investors was false and fraudulent and that the securities and common laws were violated in connection with that offering. Plaintiffs further claim that Levine and Siegel were aware of the integrated offering, knew that the information being disseminated to potential investors was false and fraudulent, and were themselves guilty of complicity with Boesky in criminal conduct that contributed to Boesky's per-

formance record and inflated reputation in arbitrage and securities transactions, which in turn were used to dupe plaintiffs into purchasing the Partnership securities. That, nevertheless, Levine and Siegel did not disclose or cause Drexel to disclose Boesky's alleged criminal securities violations or said defendants' acts in complicity therewith, with the express intention to aid and abet the fraud perpetrated on plaintiffs.

Defendants Levine and Siegel were both Managing Directors at Drexel. Levine worked in the Mergers and Acquisitions department of Drexel from February 1985 until May 12, 1986, when he was arrested on criminal charges of obstruction of justice in connection with a Securities and Exchange Commission ("SEC") investigation into his unlawful securities trading activities. Levine had engaged in a massive scheme to violate the federal securities laws by trading on illegally obtained "inside" information concerning the affairs and securities of public companies.

On June 5, 1986, Levine pleaded guilty to four felonies: one count of securities fraud, one count of perjury and two counts of tax evasion. Levine was sentenced to imprisonment and fined and is presently serving that sentence. He was also ordered in an SEC civil action to disgorge $11 million to a fund established for those injured by his criminal securities activities and was permanently barred from the securities industry. As part of his plea package, Levine disclosed to the government that Boesky had repeatedly bought from and paid Levine large sums of cash for unlawfully obtained information and had reaped enormous profits by trading on the information. These disclosures ultimately precipitated the downfall of the Boesky financial empire in November 1986.

Defendant Siegel engaged in acts and transactions not unlike those of Levine, again in complicity with Boesky, resulting in enormous profits to Boesky and a payoff to Siegel from Boesky of approximately $700,000. Siegel transferred from another investment banking house to the Mergers and Acquisitions department of Drexel in February 1986. On February 13, 1987, Siegel consented to the entry of an injunction against him in an SEC enforcement action based on his having sold inside information to Boesky on which Boesky had engaged in highly profitable securities trading. As part of the settlement with the SEC, Siegel agreed to disgorge the moneys paid to him by Boesky, as well as $8 million in cash and assets to create a fund to satisfy claims and judgments against him in connection with his illicit activities. Also on February 13, 1987, Siegel pleaded guilty to a charge of criminal conspiracy to defraud and a further count of tax evasion. He is awaiting sentence.

### The Motions

The asserted grounds for these motions are identical—Levine and Siegel claim that they did not owe any duty to plaintiffs herein and did not have any direct involvement in the transaction complained of and that therefore their liability to plaintiffs, if any, for aiding and abetting the transaction can be predicated only on establishing that they rendered substantial assistance to the transaction. They contend that mere "intentional" silence is insufficient aid to impose liability on them. Movants characterize the allegations against them as charges of merely remaining silent and failing to disclose what they knew.

### Discussion

The Amended Complaints and the proceedings of which the Court takes judicial notice, sufficiently indicate that Levine and Siegel affirmatively and knowingly rendered requisite substantial assistance to Boesky, Boesky & Kinder Partners, L.P., and the Partnership. They were directly involved as accomplices in illegal transactions with Boesky, actively participated in ventures of Boesky that were illegal, and, despite Levine's and Siegel's knowledge and active participation in the misconduct, these facts were omitted from disclosure to plaintiffs in the offering and prospectus challenged here. Levine and Siegel are charged with far more than merely possessing information and keeping silent.

They are alleged to have been active and substantial conspirators and participants in Boesky's schemes to defraud and to violate the securities laws. They are alleged to have conspired for pay, with Boesky, to create a money machine to be operated by Boesky, which depended on the dishonest conduct of Levine, Siegel, Boesky and possibly others. Levine and Siegel allegedly supplied Boesky with raw material, tainted information, essential to his schemes.

The moving defendants stress their contention that they lacked a direct involvement in the creation by Boesky of the $1 billion arbitrage fund and that their nondisclosure and silence as to their roles could not legally rise to the level of aiding and abetting the violations charged under the securities laws.

Again, as was the case when other defendants moved against the Amended Complaints, the Court is presented at an early stage of the litigation with an undeveloped state of facts and the application of pleading rules. The Amended Complaints, however, expressly and by reasonable implication, together with the public records, reveal as matter of pleading an ample involvement and substantial assistance by these defendants toward accomplishing the violations charged.[1] The identity of these defendants with Boesky's misdeeds cannot be brushed aside on a formal challenge addressed to the semantics of a pleading pertaining to securities violations, to give substance to the contention that the moving defendants are not connected therewith.

The defendants, as accomplices of Boesky in arbitrage and securities misconduct, are alleged to have been significant contributors to the conception, creation and chances of success of the $1 billion arbitrage fund whose securities are here in issue. As suppliers to Boesky of business opportunities that did, and would, paint a picture of and create a climate for investor acceptability of Boesky's arbitrage and securities successes, defendants set the scheme in motion which bore fruit in the formation of the Partnership and its planned operation. Taken together with the profit that Levine and Siegel were deriving from Boesky's arbitrage ventures and the reasonable presumption of the continuance thereof, those facts provide sufficient basis for the Court at this time to ascribe to said defendants a conspiratorial role in and the requisite knowledge and intent to aid and abet Boesky's primary frauds by their substantial assistance. Nothing before the Court indicates that prior to the completion of the offering there was a withdrawl from the relationship and an intended cessation of the course of conduct and illicit acts.

The nondisclosure publicly of the alleged participating roles of the moving defendants and the implications thereof shrouded by a veil of silence does not serve to place them beyond the circle of responsibility, certainly not at this stage, before an indepth development of the pertinent facts establishing or negating their intent and substantial assistance and participation in the creation and planned operation of the arbitrage and securities fund and the sale of its securities to unsuspecting purchasers.

The argument of remoteness of the acts of the defendants to the conception and creation of the arbitrage and securities vehicle here involved raises a factual matter not capable of resolution on a motion addressed to a pleading. Whether a nondisclosure by one in the posture of a silent conspirator could have caused or induced, foreseeably or proximately, plaintiffs' decision to invest in the arbitrage partnership and whether such nondisclosure bears a direct and proximate causal relationship to plaintiffs' claimed losses, or is at a remote distance therefrom, depends on the facts to be proved. The Amended Complaints as pleaded raise a reasonable inference that Levine and Siegel continued to conspire with Boesky throughout the Partnership's conception, creation, promotion and capital-

---

1. *See, e.g., Arden Way* Amended Complaint paras. 76, 90, 91, 96, 98, 118, 120, 138, 140, 163, 170, 171, 173, 176, 178, 179, 181, 183, 185, 187, 188, 239, 240, 243, 244, 247, 248, 251, 252, 269, 270, 273, 274, 277, 278, 281, 282, 373, 374, 375, 376, 379, 380, 381, & 382.

ization. This is a triable issue. Even if the sale of illicit information did not run through the full span of the Partnership's creation, the moving defendants had already substantially assisted Boesky in his illegal schemes with knowledge that Boesky was scheming to capitalize the Partnership based on representations of its legality and his status in the industry which was a product, in part, of defendants' acts. Their substantial assistance was essential to Boesky's creation of the Partnership. Defendants' knowledge, plus substantial assistance, state a claim for aiding and abetting.[2]

The motions are, in all respects, denied.

2. Siegel has directed the Court's attention to an *amicus curiae* brief filed by the SEC in a case pending before the Supreme Court. He claims that the SEC's position there is that liability under section 12 of the Securities Act of 1933 in a private civil action does not extend to aiders and abettors. Our reading of the *amicus* brief, however, is that the SEC supports the common law rule that, in the absence of privity, persons are liable for rescission only where they acted with scienter. *See* Brief for the Securities and Exchange Commission as Amicus Curiae at 26,

*Pinter v. Dahl,* Sup.Ct.Dkt. No. 86–805 (brief filed July 24, 1987). This accords with decisions in this Circuit that, absent privity, liability under section 12 as a participant, aider and abettor, or coconspirator requires proof of scienter. *See Akerman v. Oryx Communications, Inc.,* 810 F.2d 336, 344 (2d Cir.1987); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 756 (2d Cir.1986); *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1298 (2d Cir.1973) (en banc). Scienter has been pleaded in the Amended Complaints before this Court.